UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BATIESTE GREENE, JR., <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., et al., <br><br> Defendants. | Case No. 18-cv-06689-JSC <br><br> **ORDER RE: DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 28 |

John Batieste Greene, Jr. ("Plaintiff") sued Wells Fargo Bank, N.A. ("Wells Fargo") and Affinia Default Services, LLC ("Affinia") (together, "Defendants") in the Superior Court of the State of California for the County of Contra Costa, alleging violations of California state law arising out of foreclosure proceedings.[1] (Dkt. No. 1, Ex. A at 12-13.)[2] Defendant Wells Fargo timely removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and purported federal question jurisdiction under 28 U.S.C. §§ 1331, 1441(b). (Dkt. No. 1.) Now pending before the Court are Defendants' motion to dismiss the first amended complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and accompanying request for judicial notice.[3] (Dkt. Nos. 28 & 29.) After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), vacates the March 28, 2019 hearing, and GRANTS Defendants' motion to dismiss with leave to amend.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 11, 14.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[3] Defendant Affinia joins in Wells Fargo's motion to dismiss. (Dkt. No. 30.)

# BACKGROUND

## I. Complaint Allegations and Judicially Noticeable Facts[4]

The gravamen of Plaintiff's complaint is that Defendants[5] improperly initiated foreclosure proceedings while "Plaintiff was undergoing loan modification review." (Dkt. No. 22 at ¶ 1.) Plaintiff has at all relevant times owned and resided at the subject property located at 1795 Meadows Avenue, Pittsburg, CA 94565. (*Id.* at ¶ 10.) In November 2005, Plaintiff obtained a loan of $599,000 from World Savings Bank, secured by a deed of trust.[6] (Dkt. No. 29, Ex. 1.) The loan was assigned to Wells Fargo in 2009 following a corporate merger. (Dkt. No. 22 at ¶ 11; *see also* Dkt. No. 29, Exs. 1-3.) On September 24, 2013, the trustee recorded a Notice of Default against the subject property. (Dkt. No. 29, Ex. 4.)

In or around 2015, Plaintiff experienced financial hardship and applied to Wells Fargo "for a loan modification in order to avoid foreclosure." (Dkt. No. 22 at ¶ 13.) During the loan modification process, Wells Fargo "asked for the same or similar documents several times despite Plaintiff having already submitted them," and initiated foreclosure proceedings, "which in turn forced Plaintiff to file for [b]ankruptcy." (*Id.* at ¶¶ 13-14.) At some point thereafter, Plaintiff again experienced financial hardship and sought "foreclosure prevention assistance" from Wells Fargo. (*Id.* at ¶ 15.) Plaintiff "submitted a complete application to [Wells Fargo] for a foreclosure prevention alternative," however, Wells Fargo "proceeded with foreclosure," and Plaintiff again filed for bankruptcy in or around July 2017. (*Id.* at ¶¶ 17-18.)

In September 2017, Plaintiff confirmed "a Chapter 13 Plan for payment of arrears to [Wells Fargo]." (*Id.* at ¶ 18.) Plaintiff was unable to make payments under the Plan, and on August 1, 2018, the bankruptcy court granted Wells Fargo relief from automatic stay following

---

[4] As discussed below, the Court grants judicial notice of certain adjudicative facts proffered by Defendants.
[5] It is undisputed that Wells Fargo is the "loan servicer and beneficiary of Plaintiff's loan," and Affinia is the "current trustee of Plaintiff's loan." (Dkt. No. 22 at ¶¶ 4-5.) Plaintiff alleges that "each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each remaining Defendant." (*Id.* at ¶ 8.)
[6] The FAC alleges that "[i]n 2004, Plaintiff executed a Promissory Note and Deed of Trust in Favor of World Savings Bank for the first-lien mortgage of the [subject property]." (Dkt. No. 22 at ¶ 11.) According to the terms of the deed, however, Plaintiff executed the Deed of Trust on November 23, 2005. (*See* Dkt. No. 29, Ex. 1 at 6.)

United States District Court
Northern District of California

1 Plaintiff's default. (*Id.* at ¶¶ 21-22.) Plaintiff then requested a loan modification from Wells Fargo and "submitted a complete loan modification application in order to avoid foreclosure," but Wells Fargo "represented to Plaintiff that further documentation was needed." (*Id.* at ¶¶ 23-24.)

On September 20, 2018, Wells Fargo recorded a Notice of Trustee's Sale, indicating that Plaintiff was in default under the Deed and a public auction would place on October 22, 2018 unless Plaintiff took corrective action. (*Id.* at ¶ 32; *see also* Dkt. No. 29, Ex. 6 at 36.) Prior to recording the Notice, Wells Fargo did not "provide Plaintiff with a written determination of his loss mitigation application." (Dkt. No. 22 at ¶ 33.) Wells Fargo's delay "in complying with its obligation to provide Plaintiff with a written determination" resulted in a continued accrual of the arrears on his loan, "which made it more difficult to modify the loan." (*Id.* at ¶ 34.)

## II. Procedural History

Plaintiff filed his complaint in the Superior Court of California County of Contra Costa on October 17, 2018, seeking injunctive relief and monetary damages arising out of foreclosure proceedings. (Dkt. No. 1, Ex. A at 12.) On November 2, 2018, Wells Fargo removed the action to this Court, (Dkt. No. 1), and Defendant Affinia consented to removal, (Dkt. No. 3). The Court granted Defendants' motion to dismiss the original complaint on December 28, 2018, granting leave to amend as to Plaintiff's claims under the California Homeowner Bill of Rights and the Unfair Competition Law, and dismissing with prejudice Plaintiff's claim under the Rosenthal Fair Debt Collection Practices Act. (Dkt. No. 20.)

Plaintiff filed the FAC on January 24, 2019, reasserting his claims under the California Homeowner Bill of Rights and the Unfair Competition Law. (Dkt. No. 22.) Defendants moved to dismiss thereafter. (Dkt. Nos. 28 & 30.) The motion is fully briefed. (*See* Dkt. Nos. 31 & 32.)

## PRELIMINARY ISSUES

### I. Request for Judicial Notice

Generally, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). When such materials "'are presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule 56." *Id.*

3

United States District Court
Northern District of California

1 (quoting Fed. R. Civ. P. 12(d)). There are, however, "two exceptions to this rule: the

2 incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

Pursuant to the Federal Rules of Evidence, a judicially noticed adjudicative fact must be one "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants request judicial notice of six documents that they previously submitted in support of their motion to dismiss the original complaint. (*Compare* Dkt. No. 8 *with* Dkt. No. 29.) The Court granted judicial notice of those documents pursuant to Rule 201(b) because they were undisputed matters of public record. (*See* Dkt. No. 20 at 4-5.) Plaintiff now objects to Defendants' request as to Exhibit 2 and Exhibit 3 on the grounds that the documents "are not known by the Court and there is no attempt, via a declaration or otherwise, regarding the accuracy of the documents both in terms of the existence or the content of the letter."[7] (Dkt. No. 29 at 2.) Plaintiff's objection is unavailing. The Court has already judicially noticed these documents under Rule 201(b) because they reflect official government action and their accuracy cannot reasonably be questioned. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (noting that district courts may take judicial notice of "records and reports of administrative bodies").

Accordingly, the Court grants Defendants' request for judicial notice of Exhibits 1-6.

**II. Subject Matter Jurisdiction**

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for 'federal question' jurisdiction, § 1332 for 'diversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (internal brackets omitted).

Plaintiff's opposition raises a challenge to this Court's subject matter jurisdiction;

---

[7] Exhibit 2 is a letter from the U.S. Department of the Treasury, Office of Thrift Supervision, dated November 19, 2007, "authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB." (Dkt. No. 29, Ex. 2 at 24.) Exhibit 3 is an "official certification" from the U.S. Department of the Treasury, Office of the Comptroller of the Currency, "stating that effective November 1, 2009, Wachovia converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A." (*Id.*, Ex. 3 at 26.)

4

specifically, Plaintiff argues that federal question jurisdiction is lacking because only state law claims remain and diversity jurisdiction under 28 U.S.C. § 1332 is lacking because the relief sought does not meet the amount-in-controversy requirement. (Dkt. No. 31 at 14-15.) The Court agrees that federal question jurisdiction is lacking.[8] The Court is satisfied, however, based on Wells Fargo's notice of removal and the relief requested in the FAC, that diversity jurisdiction under 28 U.S.C. § 1332 exists.

"For a federal court to exercise diversity jurisdiction under § 1332(a), the amount in controversy must exceed $75,000, and the parties must be citizens of different states." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017). Plaintiff does not dispute that diversity of citizenship exists between he and Defendants.[9] Plaintiff instead argues that "the injunctive relief that Plaintiff seeks in the pleadings is insufficient for the amount in controversy requisite for jurisdiction under 28 U.S.C. § 1332." (Dkt. No. 31 at 15.) Plaintiff is wrong because the FAC does not seek *only* injunctive relief, but instead seeks "compensatory and statutory damages, attorneys' fees[ ] and costs," and punitive damages.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the of the object of the litigation." *Corral*, 878 F.3d at 775. Where the plaintiff seeks to "permanently enjoin foreclosure, the object of the litigation is the ownership of the property," thus, "the value of the property or the amount of indebtedness on

---

[8] Plaintiff's original complaint alleged violations of sections 1692d, 1692e, and 1692f of the Fair Debt Collection Practices Act ("FDCPA") under the complaint's second cause of action for violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788.17. (*See* Dkt. No. 20 at 12); *see also Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (noting that "[t]he Rosenthal Act mimics or incorporates by reference the FDCPA's requirements, including those described above, and makes available the FDCPA's remedies for violations.") (citing Cal. Civ. Code § 1788.17). The complaint alleged those violations, however, only in the context of its claim under § 1788.17 of the RFDCPA. (*See* Dkt. No. 1, Ex. A at 19-20 (stating claim under Cal. Civ. Code § 1788.17 and referencing FDCPA provisions incorporated by § 1788.17)); *see also Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ("Under the longstanding well-pleaded complaint rule, . . . a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].") (internal quotation marks and citation omitted) (alteration in original). Thus, federal question jurisdiction has never existed in this case, contrary to Defendants' assertions. (*See* Dkt. No. 32 at 3-4.)
[9] It is undisputed that Plaintiff is a citizen of California, Wells Fargo is a citizen of South Dakota for purposes of diversity, and Affinia LLC's members are citizens of Georgia and Affinia maintains its principal place of business in Florida. (*See* Dkt. No. 1 at 2-5.)

the property is a proper measure of the amount in controversy." *Id.* at 776. According to the Notice of Trustee's Sale, (Dkt. No. 29, Ex. 6 at 36), over $445,000 is owing on the property as of October 12, 2018. Thus, if Plaintiff were seeking a *permanent injunction* enjoining the foreclosure of the Subject Property, the amount at issue would obviously exceed the amount in controversy requirement.

Plaintiff cites—with no commentary or argument—*Corral v. Select Portfolio Servicing, Inc.*, purportedly for that court's holding that "when a plaintiff seeks only a temporary injunction pending review of a loan modification application, the amount of indebtedness [does not] constitute[ ] the amount in controversy related to that injunctive relief." *Id.* at 775. The request for injunctive relief in *Corral* specified that the plaintiff sought "an order enjoining the sale of the Subject property while Plaintiffs' loan modification application is under review." First Amended Complaint, *Corral v. Select Portfolio Servicing, Inc.*, Case No. 3:15-cv-01542-EMC, Dkt. No. 14 at 17 (N.D. Cal. filed April 23, 2015). Here, the FAC seeks the following injunctive relief "during the pendency of the action":

> 2. For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity;
>
> 3. For a preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them from seeking to evict Plaintiff until the claims herein are resolved

(Dkt. No. 22 at 10.) Plaintiff's use of the phrase "permanent injunction" is confusing, however, if Plaintiff were to prevail on his claims, he would still be liable for the debt owed on the Subject Property. In other words, because the FAC is not seeking to quiet title or otherwise invalidate the underlying home loan, he could not obtain injunctive relief *permanently* enjoining foreclosure on the property. Plaintiff instead appears to seek temporary injunctive relief pending review of his August-September 2018 loan modification application. Thus, the injunctive relief sought here is the same as that in *Corral*. As the *Corral* court held, the amount in controversy in cases "seeking a temporary injunction pending review of a loan modification application . . . does not equal the value of the property or amount of indebtedness." *See* 878 F.3d at 776 (distinguishing cases "in

6

which plaintiffs seek to enjoin foreclosure indefinitely as part of an effort to quiet title to the property or rescind their loan agreements," and noting that "even if Appellants were to succeed on this lawsuit, they would not be able to retain possession and ownership of their Property without paying off their debt."). The Court must thus determine whether it is otherwise evident from the face of the complaint that over $75,000 is in controversy.

In addition to injunctive relief, the FAC seeks the following:

> 5. For damages, not to exceed $75,000.00, disgorgement, and injunctive relief, but in case [sic] for any amounts to, in total exceed $75,000;
>
> 6. For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;
>
> 7. For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct

(Dkt. No. 22 at 10.) Plaintiff's claim under the California Homeowner Bill of Rights provides, in pertinent part:

> If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct . . . the court may award the borrower the greater of actual treble damages or statutory damages of fifty thousand dollars ($50,000).

Cal. Civ. Code 2924.12(b). Here, Plaintiff alleges that "Defendants' actions were malicious and willful." (Dkt. No. 22 at ¶ 52.) Thus, if Plaintiff prevails he is entitled to "*the greater of* actual treble damages or statutory damages" of $50,000. *See* Cal. Civ. Code 2924.12(b) (emphasis added). However, that amount does not include the additional relief sought—attorneys' fees and costs, and punitive damages. (*See* Dkt. No. 22 at 10.)

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Section 2924.12 provides for attorneys' fees and costs to the prevailing borrower:

> A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

Cal. Civ. Code 2924.12(h). Thus, Plaintiff may recover attorneys' fees and costs.

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Here, Plaintiff alleges that "Defendants are also guilty of malice, fraud and/or oppression as defined in the California Civil Code § 3294." (Dkt. No. 22 at ¶ 52.) Section 3294 provides for "exemplary," or punitive damages, "in addition to actual damages." Thus, Plaintiff may recover punitive damages.

In sum, the FAC seeks statutory damages of at least $50,000 or actual damages if greater in an amount "not to exceed $75,000," in addition to: (1) attorneys' fees and costs of suit, (2) punitive damages. (*Id.* at 10.) In other words, Plaintiff seeks actual damages as high as $75,000, *plus* attorneys' fees and costs and punitive damages. The amount in controversy is thus over $75,000. *See Johnson v. Select Portfolio Servicing, Inc.*, No. CV 15-9231-JFW (ASx), 2016 WL 837895, at *2 (C.D. Cal. Mar. 3, 2016) ("In light of the relief requested, including compensatory, special and general damages, civil penalties pursuant to California Civil Code § 2924.12(b) for the greater of treble damages or $50,000, restitution and the disgorgement of profits, and attorneys' fees, and Plaintiffs' allegation . . . that 'the amount of controversy is approximately $75,000,' the Court finds that Defendants have established, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.").

Accordingly, the Court concludes that it has subject matter jurisdiction under 28 U.S.C. § 1332(a).

**DISCUSSION**

Plaintiff brings two causes of action against Defendants seeking damages and injunctive relief for alleged violations of: (1) the California Homeowner Bill of Rights, California Civil Code § 2924.11; and (2) the Unfair Competition Law, California Business and Professions Code § 17200. Defendant moves to dismiss both claims. The Court addresses each in turn.

**I.      Homeowner Bill of Rights**

Plaintiff's claim under the California Homeowner Bill of Rights ("HBOR") alleges specific violations of Sections 2924.11(a) and 2924.11(b). Section 2924.11(a) prohibits "dual tracking" whereby a mortgage servicer pursues foreclosure while a borrower's "complete

application for a foreclosure prevention alternative" is pending. Cal. Civ. Code § 2924.11(a). The section provides:

> If the borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage service, a mortgage service, trustee, mortgagee, beneficiary, or authorized agent shall not record notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding the borrower's eligibility for the requested foreclosure prevention alternative.

*Id.* Section 2924.11(b) requires a mortgage servicer to send written notice to a borrower if it denies the borrower's loan modification application. The section provides:

> Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying with specificity the reasons for the denial and shall include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer.

Cal. Civ. Code § 2924.11(b). Plaintiff alleges that he requested a loan modification from Wells Fargo in August 2018. (Dkt. No. 22 at ¶ 42.) He further alleges that Wells Fargo sent him a loan modification application, and Plaintiff "filled it out in its entirety" and timely "returned it to [Wells Fargo] with all requested documents" at least five days prior to the September 20, 2018 Notice of Trustee Sale. (*Id.* at ¶ 43.) Plaintiff asserts that Defendants' conduct thus violates sections 2924.11(a),(b).

Defendants argue that Plaintiff's HBOR claim must be dismissed because: (1) Plaintiff fails to adequately allege that his loan modification application was "complete"; and (2) Plaintiff fails to plead a "material" violation of section 2924.11. (Dkt. No. 28 at 4-5.) The Court addresses each argument in turn.

### A. Complete Application

Section 2924.11(f) of HBOR provides:

> For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all the documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

9

Cal. Civ. Code § 2924.11(f). The Court's previous order granting dismissal of this claim concluded that Plaintiff's allegations regarding the "completeness" of his application were conclusory; specifically, the original complaint alleged only that Plaintiff timely "submitted a complete loan modification application in order to avoid foreclosure," but Wells Fargo "continued to make repeated requests for documents that Plaintiff had already submitted." (*See* Dkt. No. 20 at 8-10.) Defendants argue that the FAC fails to correct that deficiency. The Court agrees.

The FAC adds the following allegations regarding the completeness of Plaintiff's application:

> Plaintiff requested loss mitigation options from [Wells Fargo], and [Wells Fargo] sent him an application for a proprietary loan modification.
>
> [Wells Fargo's] application for its proprietary loan modification had a list of questions and requests for documents.
>
> Furthermore, [Wells Fargo's] proprietary loan modification is evaluated by standards that were never disclosed to Plaintiff and which are not known to Plaintiff, and its loan application is unique to [Wells Fargo].
>
> Plaintiff replied in full to each one of the questions on [Wells Fargo] proprietary loan modification with clear, concise, plainly stated responses such as his sources of income.
>
> Furthermore, Plaintiff provided to [Wells Fargo] copies of all of the documents that [Wells Fargo] requested in the in its proprietary loan modification application.
>
> However, [Wells Fargo] continued to make repeated requests for documents that Plaintiff had already submitted.

(Dkt. No. 22 at ¶¶ 25-30.) In sum, Plaintiff alleges that he timely submitted a loan modification application that answered all questions asked of him and included all documents requested, but Wells Fargo subsequently (and repeatedly) asked for the same documents. Taking the above allegations as true, they are still insufficient to survive dismissal.

The new allegations are another way of stating, in a conclusory fashion, that Plaintiff submitted a complete loan application and provided all documents that were asked of him. The allegations do not contain the type of factual content the Court noted were needed in its previous order dismissing this claim. (*See* Dkt. No. 20 at 9 ("Plaintiff merely alleges that his application

10

was 'complete' for purposes of section 2924.11(f) and provides no factual support (i.e., *what documents were required and initially submitted, and what additional documents were requested and submitted*)." (emphasis added))); *see also Tatiano v. Wells Fargo Bank*, N.A., No. 18-cv-03924-NC, 2018 WL 5849005, at *4 (N.D. Cal. Nov. 5, 2018) (finding insufficient the plaintiffs' allegation "that they have submitted 'all financial documentation and information which included all of the documentation that [d]efendant requested from [p]laintiffs," dismissing with leave to amend and noting that the amended complaint "must clearly allege what documents were requested by Wells Fargo as part of the foreclosure prevention application process and what documents [the plaintiffs] provided."); *Saridakis v. JPMorgan Chase Bank*, No. CV 14-06279 DDP (Ex), 2015 WL 570116, at *2 (C.D. Cal. Feb. 11, 2015) (rejecting as conclusory the plaintiff's allegation that he "'submitted a completed, legible and satisfactory loan modification application' to [defendant].").

Plaintiff provides no dates regarding when he requested or submitted his loan modification application, or when Wells Fargo "continued to make repeated requests for documents." Plaintiff instead provides only a general time frame between August 1, 2018 and at least "five (5) days prior to [Well Fargo's] recordation of the September 20, 2018 Notice of Trustee Sale." (*See* Dkt. No. 22 at ¶¶ 22-32, 42-43.) This is curious given that the alleged conduct at issue occurred less than 6 months ago. More importantly, Plaintiff still alleges no facts regarding what documents the application required Plaintiff to initially submit and what documents Wells Fargo subsequently (and repeatedly) asked for. Absent such facts, the Court cannot reasonably infer that Plaintiff's application had "supplied the mortgage servicer with all the documents required by the mortgage servicer" as required for a "complete" application under section 2924.11(f) of the HBOR. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Plaintiff argues that the FAC's allegations track those found sufficient in *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1263 (N.D. Cal. 2014). Plaintiff is wrong. As the Court noted in its previous order, the *Gilmore* court concluded that the plaintiff alleged sufficient *facts* as

11

to completeness where the plaintiff:

> [A]lleges that, prior to the [recording of the notice of sale], he attended a home preservation workshop hosted by Wells Fargo. He alleges that he prepared all the required loan modification documents prior to the workshop, in accordance with a checklist promulgated by Wells Fargo. Furthermore, he alleges that he spoke to [a] Wells Fargo employee who both accepted the application and told him the application was complete.

75 F. Supp. 3d 1255, 1263 (N.D. Cal. 2014). Plaintiff alleges no equivalent facts here. Plaintiff does not allege that he was told by Wells Fargo that his application was complete; indeed, Plaintiff alleges the opposite—that Wells Fargo continued to request documentation from him. Again, absent factual allegations regarding what documents were initially submitted and subsequently requested, the Court cannot reasonably infer that Plaintiff's application was "complete" under the HBOR.

Plaintiff further argues that he need not plead with "fraud-pleading level specificity" to survive dismissal. (*See* Dkt. No. 31 at 12.) The Court agrees; however, Plaintiff must allege *some* facts and provide more than a "formulaic recitation of the elements of a cause of action." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff fails to do so.

### B. Material Violation

A plaintiff must demonstrate a "material violation" of section 2924.11 to impose liability under the HBOR. *See* Cal. Civ. Code §§ 2924.12(a) (pre-foreclosure sale),(b) (post-foreclosure sale). No statute or California state court has defined materiality for purposes of section 2924.12, however, courts examining this issue have concluded that a violation is "material" if it is plausible that the violation "affected a plaintiff's loan obligations or the modification process." *See, e.g., Cornejo v. Ocwen Loan Serv., LLC*, 151 F. Supp. 3d 1102, 1113 (E.D. Cal. 2015) (collecting cases); *Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862, 869-71 (N.D. Cal. 2017) (agreeing that a "material violation" is one that affects the plaintiff's loan obligations or the loan modification process).

Defendants incorporate by reference their previous argument that Plaintiff fails to adequately plead a "material" violation of the HBOR because he "alleges no action or forbearance taken . . . in reliance on his submission of yet another loan modification application." (*See* Dkt.

No. 28 at 6 (incorporating by reference argument in Dkt. No. 7 at 16).) The Court agrees that the FAC fails to correct the deficiencies noted in the Court's previous order dismissing this claim.

The FAC alleges that Wells Fargo "was aware that Plaintiff was in loan modification at the time it directed [Affinia] to actively foreclose on the property, in clear violation of Cal. Civ. Code § 2924.11(a)." (Dkt. No. 22 at ¶ 49.) Because of Defendants' alleged violation, "Plaintiff has suffered and continues to suffer damages, including the active foreclosure of Plaintiff's home, Plaintiff's legal fees, and foreclosure fees, in addition to emotional distress, frustration, fear, anger, helplessness, nervousness, and anxiety." (*Id.* at ¶ 50.) Further, Plaintiff alleges that he "was harmed economically by suffering an increase in the arrears on his loan balance by Defendants' delay in rendering a written determination on his loss mitigation application." (*Id.* at ¶ 51.) These allegations are insufficient to demonstrate a material violation for two reasons.

First, and as noted in the Court's previous order:

> Setting aside that Plaintiff may only seek injunctive relief under the HBOR because the foreclosure sale has not taken place, his allegation is insufficient to show a material violation. It is undisputed that Plaintiff defaulted on the Chapter 13 Plan. Thus, foreclosure was imminent before Plaintiff submitted his loan modification application. Plaintiff alleges no facts giving rise to a reasonable inference that any "foreclosure alternatives [Plaintiff] would have sought, had [he] received an answer to [his] application from [Wells Fargo] would have avoided or reduced the damages [he] alleges." *See Travis v. Nationstar Mortg., LLC*, 733 F. App'x. 371, 376 (9th Cir. 2018) (finding allegations insufficient to survive motion to dismiss where the plaintiffs merely alleged that "if they 'were denied for a loan modification they would have . . . sought some other type of foreclosure alternative such as a standard sale of the property.'"). In other words, Plaintiff provides no factual allegations supporting a plausible inference that Defendants' purported violation of Section 2924.11 affected his loan obligations or the loan modification process. *See Cardenas*, 281 F. Supp. 3d at 869-71. Because Plaintiff fails to plead a material violation of the HBOR, his claim fails.

(Dkt. No. 20 at 11.) Second, and as previously discussed, the FAC does not adequately allege that Plaintiff submitted a complete loan modification application for purposes of liability under the HBOR. It follows that any violation based on Defendants' alleged "delay in rendering a written determination" on that application must fail.

Plaintiff's opposition does not counsel a different result. Plaintiff argues that the FAC

13

pleads a material violation of the HBOR because it "states facts which give rise to the reasonable inference that WELLS FARGO actually encouraged his foreclosure which is the opposite of the purpose of the HBOR to say the least." (Dkt. No. 31 at 12.) The judicially noticeable facts and Plaintiff's own allegations show otherwise, however. The FAC alleges that Plaintiff filed for bankruptcy in July 2017, and in September 2017 Plaintiff confirmed "a Chapter 13 Plan for payment of arrears to [Wells Fargo]." (Dkt. No. 22 at ¶ 18.) The FAC further alleges that Plaintiff was unable to make payments under the Plan, and on August 1, 2018, the bankruptcy court granted Wells Fargo relief from automatic stay following Plaintiff's default. (*Id.* at ¶¶ 21-22.) Plaintiff's September 2018 declaration in support of his First Amended Application to Modify Chapter 13 Plan states, in pertinent part: "The reason for the modification of the Chapter 13 plan is that my income has reduced. I have been on temporary disability since September 2017 and it is unknown when I will return to work." (Dkt. No. 29, Ex. 5 at ¶ 3.) Thus, the Court cannot plausibly infer that Defendants' purported violation of Section 2924.11 affected Plaintiff's loan obligations or the loan modification process where it is undisputed that Plaintiff defaulted on the Chapter 13 Plan, the bankruptcy court granted Wells Fargo relief from stay, and Plaintiff acknowledged that he defaulted because he was out of work and his "income has reduced." Nor can the Court plausibly infer any material violation arising out of the alleged post-default August-September loan modification process because Plaintiff fails to adequately allege that he submitted a complete application.

\*\*\*

The Court grants Defendants' motion to dismiss Plaintiff's HBOR claim because Plaintiff fails to plausibly allege both that his loan modification application was complete prior to the issuance of the September 20, 2018 Notice of Trustee's Sale, and that Defendants' alleged conduct following Plaintiff's default on the Chapter 13 Plan constitutes a "material" violation of the HBOR. The Court again dismisses this claim with leave to amend because it could "be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## II. Unfair Competition Law

Plaintiff's second claim alleges violations of California's Unfair Competition Law

("UCL"). The UCL prohibits, and provides civil remedies for, "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).

To have standing to sue under the UCL, a plaintiff must show that: (1) he suffered an injury in fact, (2) he lost money or property, and (3) the economic injury was caused by the defendant's conduct. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, 326 (2011); Cal. Bus. & Prof. Code § 17204. The "lost money or property" element requires that a plaintiff "demonstrate some form of economic injury." *Kwikset Corp.*, 51 Cal. 4th at 323. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 327. The first and second elements are not in dispute, and as the Court previously concluded, Plaintiff has adequately alleged economic injury sufficient to state a claim based on the impending foreclosure proceedings. (*See* Dkt. No. 20 at 16 (citing *Galang v. Wells Fargo Bank, N.A.*, No. 16-cv-03468-HSG, 2017 WL 1210021, at *6 (N.D. Cal. Apr. 3, 2017) (concluding that impending foreclosure was sufficient to show cognizable injury for purposes of UCL)).)

Defendants argue that dismissal is warranted because Plaintiff again fails to adequately allege causation of injury. The Court agrees. In its December 2018 order granting dismissal of this claim, the Court concluded that Plaintiff failed to allege causation for the following reasons:

> The complaint alleges no facts giving rise to a reasonable inference that Plaintiff's injury—impending foreclosure—was caused by Defendants' conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."). The complaint instead acknowledges that Plaintiff filed for bankruptcy and obtained a confirmed Chapter 13 Plan, defaulted on that Plan, and Wells Fargo initiated foreclosure proceedings after that default. Although Plaintiff alleges that he "was unable to continue making payments" under the Chapter 13 Plan "because of [Wells Fargo's] continued threats of foreclosure," (*see* Dkt. No. 1, Ex. A at ¶ 21), that allegation is conclusory, and refuted by the bankruptcy court filings. Because Plaintiff fails to plausibly allege a causal link between Defendants' conduct and his injury, his UCL claim must fail. *See Amer v. Wells Fargo Bank, N.A.*, No. 17-cv-03872-JCS, 2017 WL 4865564, at *12-13 (N.D. Cal. Oct. 27, 2017) (dismissing UCL claim for lack of standing where plaintiff failed to show causation by alleging no conduct by defendant "contributing to his initial default," but instead, "allege[d] that he defaulted on his

15

> loan because he began to experience financial hardship . . . and began falling behind on [his] mortgage payments"); *see also DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011) (same).

(Dkt. No. 20 at 17.) The FAC fails to cure those deficiencies and provides no factual allegations from which the Court could reasonably infer that any injury arising out of Plaintiff's impending foreclosure was caused by Defendants' conduct. The FAC instead adds only conclusory allegations to this claim, stating that Plaintiff "was harmed economically by suffering an increase in the arrears on his loan balance by Defendants' delay in rendering a written determination on his loss mitigation application," and that "Plaintiff would not have suffered this harm but for Defendants' unfair, fraudulent, and unlawful conduct as those terms are defined under the UCL." (Dkt. No. 22 at ¶¶ 62-63.) The Court cannot draw the reasonable inference that it was Defendants' unlawful delay that caused any injury arising out of the loan modification process when Plaintiff fails to plead facts giving rise to a reasonable inference that he even submitted a complete loan modification application. Further, and as previously discussed regarding Plaintiff's HBOR claim, Plaintiff fails to allege that notwithstanding the financial hardship that led him to default on his bankruptcy plan, he would have qualified for a loan modification that he could have continued to pay to avoid foreclosure. *See Travis v. Nationstar Mortg., LLC*, 733 F. App'x. 371, 376 (9th Cir. 2018) (finding allegations insufficient where the plaintiffs failed to allege "how the foreclosure alternatives [they] would have sought, had they received an answer on their application from [the defendant], would have avoided or reduced the damages they allege.").

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's UCL claim because he fails to adequately plead causation of injury sufficient to confer standing under the UCL.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss the FAC with leave to amend. Plaintiff is warned that if his amendments again fail to allege facts as opposed to conclusions his claims will likely be dismissed without further leave to amend. Plaintiff's amended complaint shall be filed within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: March 25, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge